THOMAS F. FOGARTY *et al.* *vs.* ZONING BOARD OF REVIEW
OF THE CITY OF WARWICK.

JUNE 27, 1957.

PRESENT: Condon, Roberts, Andrews and Paolino, JJ.

CONDON, J. This is a petition for certiorari to review the action of the zoning board of review of the city of Warwick in granting a permit for a convalescent home in a residence B district over the remonstrance of the petitioners. We issued the writ and in compliance therewith certified copies of the records of the board pertaining to such action have been returned to this court for our inspection to the

end that if such action is illegal and void the record thereof may be quashed.

The applicant owns and occupies as his home an eleven-room house situated on lots Nos. 133 and 135 on assessor's plat 380, at 59 Ridge Road. The area of the lots is 22,000 square feet. The house is a one-family dwelling which he bought December 6, 1955. It is located in a residence B district, in which a convalescent home is not one of the permitted uses. In his application he applied for an exception or a variation from the zoning ordinance but he did not base his claim to an exception on any specific provision in the ordinance. However, in the argument here the board relied on section VI (C) 3 thereof as authority for granting the application.

At the hearing before the board the applicant sought to support his application by claiming that he had found the house too expensive to maintain; that it was an uneconomical investment as a single-family dwelling; and that it was inconveniently situated for the transportation of two of his children to and from the city of Cranston where they attend school. It would appear that he was claiming it would be a hardship for him if he were forced to confine his use of the property to a one-family dwelling.

It is clear from the board's decision that they granted his application on the basis of that claim. They expressly found that the house was properly suited to the proposed use and that to deny the applicant permission for such use would be to deprive him of the full and beneficial use of his land. In other words, they apparently granted the application on what they deemed to be a showing of unnecessary hardship if he were compelled to comply with the literal requirements of the ordinance.

In their brief the board cite section XV (A) 4e of the ordinance as authority for their decision. As we pointed out in *Caldarone* v. *Zoning Board of Review*, 74 R. I. 196, at page 199, that provision is the same as general laws 1938,

chapter 342, §8c, authorizing zoning boards to grant variances, although it appears in the Warwick zoning ordinance as one of a number of special exceptions. However, the burden on the applicant is the same in either case. He must present evidence to show that the granting of such an exception under the ordinance would not conflict unduly with the public interest and that to deny it would result in unnecessary hardship to him.

The petitioners contend that the record fails to show any such evidence and that the board erred in resting their decision on that ground. We are of the opinion that there is merit in their contention. From our examination of the record we are unable to find any evidence of hardship as that term has been construed in *Heffernan* v. *Zoning Board of Review*, 50 R. I. 26. The applicant here has presented no evidence which tends to show that the literal enforcement of the ordinance would deprive him of all beneficial use of his land and in effect would result in the confiscation thereof. The hardship which he suffers is one which springs from an improvident investment. He has purchased a house which he now finds from experience is too expensive to maintain economically. It also appears that because of its location he labors under a further disadvantage in providing his children with suitable transportation to school. These may well be substantial hardships but they do not inhere in the limited residential use of his land as prescribed by the zoning ordinance. *Winters* v. *Zoning Board of Review*, 80 R. I. 275. The board, therefore, erred in granting his application on such evidence.

However, the board contend in their brief that their decision is consistent with section VI (A) 5 which expressly permits a hospital or a sanitarium in a residence B district. Although a convalescent home is not mentioned therein, the board argue that the section may be reasonably construed to include it. Assuming without deciding that such construction is correct, the difficulty with the board's con-

tention is that section VI (C) 3 provides that the area of the lot on which a hospital or sanitarium is located must be at least 40,000 square feet, whereas the area of the lots in question here is only 22,000 square feet. We cannot agree with the board that this condition should not apply to a convalescent home. The above provisions of section VI are legislative and subject to modification only by the city council. The board are without authority to change or ignore them in exercising their discretion on any particular application for an exception. *Carey* v. *Cassidy*, 81 R. I. 411.

The board make a final contention, namely, that their decision may be sustained as an exercise of their power under section X (A) 4b of the ordinance, which authorizes as an accessory use in all residential districts: "The furnishing of table board or the renting of rooms, provided, however, that permission for such is first obtained from the Zoning Board of Review." We are not prepared to say that it was the intendment of the city council in enacting that provision to equate the conduct of a licensed convalescent home as defined in G. L. 1938, chap. 374, with the furnishing of board or lodging. It is arguable that there is a similarity in the service extended in a convalescent home and in a boarding and lodging house, but it is also arguable that there are points of difference. In any event, the applicant did not base his application on that provision nor did the board rest their decision upon it.

In such circumstances we are of the opinion that it would be contrary to well-established principles of certiorari to import new matter of that nature into the record. We must sustain or quash the action of the board on our inspection of the record which has been certified.

The petition for certiorari is granted, the decision of the respondent board is quashed, and the records in the case which have been certified to this court are ordered returned to the respondent with our decision endorsed thereon.

*E. Raymond Walsh,* for petitioners.

*Ralph T. Lewis, Jr.,* City Solicitor, for respondent.

*Murphy, Morriss & McKenna, James R. Morriss,* for applicant.